# EXHIBIT E

Attachment 1

FCC Terre Haute

Administrative Remedy – Informal Resolution

691

| Inmate Name: _Brandon Bernard_ | Register #: _01065-010_ |
|---|---|
| Unit: _SCU_ | Date Submitted: _8-12-19_ |

**Section 1: NOTICE TO INMATE** - Be advised, normally prior to filing a Request for Administrative Remedy, BP-229 (13), you must attempt to informally resolve your complaint through your Correctional Counselor.

Section 1a: Briefly state your specific single complaint: _Execute federal execution lawfully_

See Attachment 1

Section 1b: Briefly state the resolution you request: _I request that the execution_
_I request that the execution method be modified to remedy the illegalities_
_described in the attached document and that the Federal government's method of_
_execution be premitigated in accordance with Administrative Procedure Act_

Inmate Signature: _[signature]_

Counselor Printed Name/Signature: _S.Hr. C/s_

Section 2: Department Assigned: _[ ]_

| Date Assigned: _8-12-19_ | | Date Due: _8-16-19_ | |
|---|---|---|---|
| ☐ Food Service | ☐ Unit Mgmt | ☐ Unicor | ☐ Education |
| ☐ Psychology | ☐ Medical | ☐ Chaplain | ☐ Recreation |
| ☐ Trust Fund | ☐ Custody | ☐ Facilities | ☐ Safety |
| ☐ ISM/Mailroom | ☐ Admin. | ☐ SIS | _XSL_ |

**Section 3: Department Head Response**

Issue Resolved Comments:

Issue Unresolved Comments: SEE THE ATTACHED RESPONSE

Unable to Address Issue Comments:

| Inmate Signature if Resolved: | | Date: |
|---|---|---|
| Staff Signature: _[signature]_ | | Date: _8-15-19_ |

**Section 4: Tracking**

| | BP-8 issued to inmate | BP-8 returned to Counselor | BP-9 issued to inmate | BP-9 returned to Unit Team | To Admin Remedy Clerk | Returned as Rejected |
|---|---|---|---|---|---|---|
| Date | | 8-12-19 | 8-15-19 | | | |
| Time | | 6 AM | 1230 | | | |
| Staff | | AS | AS | | | |

THX-1330.18C

Attach: 1

The method by which the Federal Government intends to execute prisoners violates the laws and Constitution of the United States for the reasons that follow:

1. The document entitled "Addendum to Execution Protocol" (hereafter referred to as "protocol"), as well as the preceding execution method, violates the Administrative Procedure Act ("APA") because they were issued without notice-and-comment rulemaking, and the protocol was therefore enacted "without observance of procedure required by law." 7 U.S.C. Section 706(2)(D); 5 U.S.C. Section 553.

2. The protocol is "not in accordance with law," is "in excess of statutory jurisdiction, authority, or limitations," is "short of statutory right" and is "arbitrary, capricious, [and] an abuse of discretion" under the APA in that (a) the protocol's use, dispensing, and administration of pentobarbital--including but not limited to a compounded version of the drug--violates the Controlled Substances Act, 21 U.S.C. Sections 801, seq. and its implementing regulations, as well as the Food Drug and Cosmetic Act, 21 U.S.C. Sections 301, et seq., and its implementing regulations; because (i) the protocol calls for the dispensing and administrative of a Schedule II and III controlled substance without a valid prescription issued for a legitimate medical purpose in the usual course of a practitioner's medical practice and through a bona fide practitioner-patient relationship; and (ii) any compounded version of pentobarbital would be "essentially a copy" of an FDA-approved drug and thus an unapproved "new drug"; (b) the protocol violates Indiana law governing the dispensing of pentobarbital and similar controlled substances and compounded drugs, including but not limited to Ind. Code Sections 35-48-2-6(e), 35-48-2-8(c), 35-48-3-9. 35-48-4-2; (c) the purportedly enabling regulations codified at 28 C.F.R. Sections 26.1-26.5 lack statutory authority; (d) the protocol violates the FDPA's requirements that federal executions (i) take place within state facilities under 18 U.S.C. 3596-3597, and (ii) use either the execution method employed by the state in which the sentence was imposed (only a few of which states use pentobarbital), or that of another state chosen by the sentencing court situated within a state that lacks the death penalty (most of which use an execution method different from protocol's); (e) the protocol may be carried out against mentally incompetent or intellectually disabled person in violation of 18 U.S.C. Section 3596(c); and (f) those who are selected and scheduled for execution under the protocol are chosen in a secretive and arbitrary fashion by the Attorney General, resulting in execution based on race, religion, geography, and other arbitrary factors.

3. The protocol is likely to cause sever pain to the prisoner in violation of the Eighth Amendment, including with the protocol use, dispensing, and administration of compounded pentobarbital, as well as the likelihood of such use, dissension, and administration by inadequately trained and unqualified medical personnel.

4. The protocol is deliberately indifferent to the prisoner's serious medical need to be free from pain and suffering during the execution process, in violation of the Eighth Amendment as well as the prisoner's right to due process of law.

5. The protocol, and the actions of the those who developed it and plan to implement, violate the due process rights of prisoners to notice and an opportunity to be heard, to equal protection of law, and to be free of cruel and unusual punishment, in that (a) the prisoners lack knowledge of (i) the procedures that will be used to carry out their execution, (ii) the persons or entities who will be involved in executions and the training and qualifications of such persons, (iii) the persons or entities who compound and/or manufacture pentobarbital with which the prisoner will be executed are, and (iv) the process by which the legal drug will be compounded or manufactured; and (b) those who are selected and scheduled for execution under the protocol are chosen in a selective and arbitrary fashion by the Attorney General resulting in executions based on race, geography, and other arbitrary factors.

28 C.F.R. 26.3(a)(4) requires that a sentence of death be implemented by "intravenous injection of a lethal substance or substances in a quantity sufficient to cause death, such substance or substances to be determined by the Director of the Federal Bureau of Prisons and to be administered by qualified personnel selected by the Warden and acting at the direction of the Marshal."  The Bureau of Prisons execution protocol complies with this, and all applicable laws and regulations.